UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DONALD O. FAZEL,<br><br>Plaintiff,<br><br>vs.<br><br>DR. BOYD, M.D.; CARLA STEPPAT,<br>INDIVIDUAL AND OFFICIAL CAPACITY;<br>SASHA LABRENZ; INDIVIDUAL AND<br>OFFICIAL CAPACITY; WARDEN K.<br>BENNETT, INDIVIDUAL AND OFFICIAL<br>CAPACITY,<br><br>Defendants. | 4:21-CV-04219<br><br><br>1915A SCREENING |

Plaintiff, Donald O. Fazel, an inmate at the Yankton Federal Prison Camp, filed a pro se

lawsuit under 28 § U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S.

388 (1971), and 42 U.S.C. § 1983.[1] Doc. 1. He filed a motion to proceed in forma pauperis and

provided a prisoner trust account report. Docs. 2, 4. Fazel has also filed a motion to appoint

counsel, a motion for release, and two emergency motions requesting additional relief. Docs. 9,

10, 14, 15. The Honorable Judge Roberto A. Lange granted Fazel's motion to proceed in forma

pauperis on December 16, 2021, and required him to pay an initial partial filing fee of $38.44.

---

[1] Fazel marked the 42 U.S.C. § 1983 action box in his complaint but not the *Bivens* action box.
Doc. 1 at 1. Because the defendants in this case are federal employees and actors, this Court
construes Fazel's complaint as a *Bivens* action. § 1983 claims can only be brought against those
who act "under color of state law[.]" *See* 42 U.S.C. § 1983. To the extent that Fazel brings §
1983 claims against defendants, those claims are dismissed with prejudice under 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A(b)(l).

1

Doc. 7. Fazel paid $30 towards his initial filing fee on February 14, 2022. Because Fazel has made significant progress towards paying his initial filing fee, this Court will now screen his complaint under 28 U.S.C. § 1915A.

## FACTUAL BACKGROUND

Fazel alleges that he saw Dr. Boyd on multiple occasions for bladder pain and urinary tract issues and that Dr. Boyd failed to properly treat him. Doc. 1 at 5-6. Fazel claims that Dr. Boyd took six months to send him to a specialist and only prescribed ibuprofen, despite Fazel's severe pain and decrease in bladder function. *Id.* at 5. He claims that medical staff proscribed Tamsulosin and Terazosin, two medications that adversely interact with each other, for months, causing significant bladder damage. *Id.* He also claims that Dr. Boyd falsified medical records by removing documentation of Terazosin and reporting that Fazel was improving when he was getting worse. *Id.* Fazel alleges that Dr. Boyd performed multiple unnecessary and intrusive prostate exams on him. *Id.* at 6. He alleges that these issues began in October 2020 and are still ongoing. *See id.* at 5; Doc. 1-1 at 35, 39, 41. On July 5, 2021, Dr. Jesse Kampshoff of the Yankton Medical Clinic suggested that Fazel undergo a CT scan of his abdomen and pelvis to further evaluate his condition. Doc. 1-1 at 41.

Fazel claims that he was sent to see a urology specialist, Dr. Fournier,[2] on September 14, 2021. Doc. 1 at 7. He claims that Dr. Fournier found that his bladder was three times the normal size with three to four times the normal amount of urine in it. *Id.* He also claims that he needed emergency surgery to prevent his bladder from bursting. *Id.* Fazel alleges that Dr. Fournier performed this surgery and removed 1,700 millimeters of old urine. *Id.* He alleges that Dr.

---

[2] Fazel repeatedly refers to "Dr. Founier" in his complaint. *See* Doc. 1. Fazel's attached medical records show that he visited Dr. George R. Fournier. Doc. 1-1 at 29. This Court will refer to Dr. Fournier by his correct name.

2

Fournier had to insert a catheter and informed him that "major pain in the tip of the genital area and bleeding" were signs to contact the facility doctor because the catheter may need to be switched out. *Id.* He also alleges that Dr. Fournier told him to inform the facility doctor if the size 16 catheter turned out to be too big so that Fazel could return to the clinic. *Id.* at 8. Fazel claims that he returned to the Yankton Federal Prison Camp and met with Nurse Steppat, who told him that he could go back to work or programming that day. *Id.* at 7. He also claims that he told her he was unable to do so because he just had a catheter placed, but Steppat told him that people wear them all the time and he should stay off duty for the rest of the day and return the next day. *Id.*

According to Fazel, he experienced excruciating pain that night and contacted Steppat. *Id.* at 8. He claims he told Steppat that he was in major pain and had blood in his urine and that he requested to see a doctor. *Id.* He claims that Steppat denied him pain medication and told him to get Tylenol from the commissary. *Id.* Fazel alleges that he informed Steppat that he could not afford Tylenol, so she offered him three days of Tylenol but refused to let him see the facility doctor. *Id.* He alleges that he had to wait four days to receive the Tylenol and that it took him thirty days to see Dr. Fournier again. *Id.* He also alleges that Dr. Fournier was disappointed to learn that Fazel was not allowed to contact the facility doctor. *Id.* Fazel claims that staff nurses discriminate against people of color, requiring officers or non-licensed medical professionals to be present for examinations of inmates of color and using gloves when treating these inmates, procedures Fazel claims are not required for white inmates. *See id.* Fazel also accuses Steppat of falsifying urine samples and threatening to write him up. *Id.* He claims that the medical department is supposed to respond in two to three days to urgent matters, but it took them eight

3

days to respond to his emails regarding blood in his urine and bleeding around his genital area.
*Id.*

Fazel sent a message to prison staff on September 25, 2021, in which he claimed that he
was denied adequate medical care. Doc. 1-1 at 17. Specifically, he claimed that he was denied
pain medication, communication with a doctor by video, and fresh urine bags every three days.
*Id.* He claimed that he had gone without a fresh catheter bag for twenty days and that he was
close to collapsing and passing out from the pain caused by his catheter. *Id.* He also claimed that
he had to go without pain meds for eight days and that he was kept from speaking with the
facility doctor for seventeen days. *Id.* Fazel alleged that Steppat violated his HIPAA rights by
examining his genitals and catheter in front of a non-medical officer when another nurse was
available. *See id.* He also alleged that he was denied food because the nurse would not allow
food to be sent over to his cell and he was unable to walk to the cafeteria. *Id.* Fazel alleged that
this forced him to eat candy instead and go fifteen days without a meal. *Id.*

Fazel alleges that Unit Manager Sasha Labrenz placed him on a list to move dorms on
November 16, 2021, four days after she returned a complaint that he filed about the medical
department to him. Doc. 1 at 9. He alleges that he told Labrenz that he could not do any moving
because of his catheter and his condition. *Id.* He alleges that Labrenz said that medical had
authorized her to move Fazel and to require him to do the lifting and labor to move. *Id.* Fazel
claims that moving required pushing a 300-pound cart a quarter mile. *Id.* He claims that Labrenz
told him he would be written up if he did not move by 8:00 A.M. the next day, so he spent the
next four hours packing his property, loading it onto a cart, and pushing it the quarter mile to his
new dorm. *Id.* He also claims that he saw a BOP truck loading property for white inmates who
were not required to push a cart. *Id.*; Doc. 1-1 at 7. He alleges that his catheter began falling out

4

while he moved dorms, causing significant bleeding and blood in his urine afterwards. Doc. 1 at 9-10. He also alleges that he emailed the nurse to try to see the doctor and tell him of his condition, but he never received a response to this email. *Id.* at 10.

In a message sent to prison staff on January 2, 2022, Fazel claims that he underwent another surgery at Yankton Medical Hospital on December 17, 2021. Doc. 10 at 1. He claims that he developed two blood clots the evening after his surgery, which required treatment from nurses at the hospital in order to restore the flow of urine into his urine bag, and that an ultrasound revealed that the second clot moved back into his bladder. *Id.* Fazel alleges that the following day, the doctor who performed the surgery told Fazel that he would typically keep patients who had undergone this procedure in the hospital for an entire week, but his hands were tied because the prison wanted Fazel returned that day. *Id.*

Fazel alleges that he was returned to the prison that day. *Id.* He had bladder pain and was unable to urinate for nine hours, at which point a prison officer contacted the doctor who performed the surgery, who instructed prison staff to take Fazel to the emergency room. *Id.* Fazel claims that prison staff instead told him that he would need a catheter inserted at the prison and that he should drink more water to resolve the problem. *Id.* Fazel claims that he was able to urinate, with much pain, the following morning. *Id.* He also claims that the prison nurse then told him that the prison nurses planned on treating him with a catheter,[3] and he refused this treatment because he was concerned that the doctor who performed the surgery did not advise it. *Id.* Fazel alleges that Dr. Fournier asked him in a follow-up appointment on December 23, 2021, if the prison staff followed his instructions to take Fazel to the emergency room if he had any

---

[3] It is unclear whether Fazel had a catheter following this surgery. *See* Doc. 10 at 1-2. It appears that Fazel had a catheter following his first surgery in September 2021, and the catheter was removed as part of his second surgery in December 2021. *See id.*

complications. *Id.* at 2. Fazel also alleges that Dr. Fournier told him to file a complaint with the South Dakota medical board if he was not getting proper treatment at the prison, which Fazel proceeded to do. *Id.*

Fazel claims that he was required to move dorms a second time on December 27, 2021, ten days after his surgery. *Id.* He claims that he was taken off medical idle status, returned to the general population, and again required to push a cart with his belongings a quarter mile, despite having instructions from his doctor that he was not to perform any strenuous activities for four to six weeks. *Id.* Fazel alleges that he has been required to work, attend programming, move heavy objects, walk across campus, and travel to the kitchen for meals despite his pain and bleeding since the second move. *Id.* He also alleges that he has been denied pain medication other than the instruction to purchase Tylenol from the commissary. *Id.*

Fazel alleges that Labrenz has deliberately interfered with and impeded his efforts to pursue legal claims. Doc. 14 at 1-4. He alleges that she withheld a December 16, 2021, court order that required a response by January 18, 2022, causing him to miss that deadline. *Id.* at 2. He also alleges that she denied him his First Step Act time credits on a technicality that could have been waived, causing him to lose his opportunity for early release. *Id.* Fazel claims that she denied him paperwork pertaining to that technicality, a packing slip for his belongings, and access to a paper shredder. *Id.* at 3. He claims that he must now transport four boxes of "critical and confidential legal documents" on his flight home to Washington, D.C., because he was not able to shred these documents at the prison. *Id.* He also claims that Labrenz's motivation for these actions is retaliation for his filing a civil suit against her. *Id.* at 2.

Fazel claims that Warden Bennett ignored her responsibilities to keep him and other inmates safe. Doc. 1 at 11. He claims that his circumstances and complaints were ignored by

6

Bennett and her staff. *Id.* He also claims that Bennett "allows and enforces daily retaliation among the staff against the inmates who file complaints." *Id.* Fazel alleges that he was told to submit grievances to the regional office without alerting Bennett because she was ignoring his complaints. *Id.*

Fazel claims that several practices at the prison constitute race-based discrimination. *See* Doc. 1 at 8; Doc. 1-1 at 7, 10-11. In addition to the treatment described above, Fazel alleges that he is forced to walk up thirty-two steps to use a TV room because African American inmates are not allowed to use the TV room on the first floor. *See* Doc. 1-1 at 7. He further alleges that African American inmates are not allowed to work in medical around white nurses, not allowed to work in education around white teachers, and not allowed to work in the commissary around products of value. *Id.* at 10. He also alleges that African American inmates are not allowed to worship in the chapel. *Id.* at 11.

Fazel brings claims for inadequate medical care against Dr. Boyd and Steppat. *Id.* at 5-8. He brings a claim for retaliation against Labrenz, although he also alleges that Steppat retaliated against him in his complaint. *See id.* at 8-10. He brings a claim alleging that his safety has been threatened by Bennett. *Id.* at 11. Fazel sues Steppat, Labrenz, and Bennett in their individual and official capacities, and he sues Dr. Boyd in his official capacity.[4] *See id.* at 1-2. Fazel claims that as a result of defendants' actions, he suffered bladder damage, needed two or three surgeries, and had a mental breakdown. *Id.* at 5, 7, 11. He also claims that he had constant blood in his urine from November 17, 2021, to December 8, 2021, and blood in his mouth for six days after having

---

[4] If a plaintiff does not specify the capacity in which he sues a defendant, the suit is treated as only including official capacity complaints. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Fazel makes no mention of the capacity in which he sues Dr. Boyd. *See* Doc. 1 at 1-2. Thus, Fazel sues Dr. Boyd in his official capacity only.

7

to move dorms. *See id.* at 9. He alleges that he has lost sleep out of fear that he would lose his

release date for filing this lawsuit and that he has suffered undue hardship, enhancement of his

depression and his eating disorder, and extreme fear for his safety and life. *Id.*; Doc. 14 at 4.

Fazel asks this Court to "sanction and correct" the medical staff issues at the Yankton Federal

Prison Camp. Doc. 1 at 12. He also asks this Court to transfer him to a new facility, place him in

protective custody, or bar Labrenz from any contact with him until his release because of his fear

of Labrenz's retaliation. Doc. 14 at 4. He seeks $250,000 and outside medical and mental health

treatment at the expense of the BOP. Doc. 1 at 12.

### LEGAL BACKGROUND

The court must assume as true all facts well pleaded in the complaint. *Estate of*

*Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be

liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354

F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain

specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)

(citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

A complaint "does not need detailed factual allegations . . . [but] requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does

not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657,

663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all of the allegations in

the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah*

*v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a "complaint must contain

8

either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

## DISCUSSION

### I. Official Capacity Claims

Fazel sues all defendants in their official capacities. *See* Doc. 1 at 2. "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting *in his or her individual capacity* for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (emphasis added) (citing *Bivens*, 403 U.S. 388); *see also Little v. South Dakota*, 2014 WL 6453844, at *3 (D.S.D. Nov. 17, 2014) ("A *Bivens* action may not be asserted against the United States, its agencies, or against federal employees in their *official* capacity." (internal quotation omitted)). A suit against defendants in their official capacity is treated as a suit against the Federal Bureau of Prisons, an agency of the United States. *See Buford*, 160 F.3d at 1203. "[A] *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Id.*; *see also Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982) ("*Bivens* and its progeny do not waive sovereign immunity for actions against the United States . . . ."). Thus, Fazel's claims against all defendants in their official capacities are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1).

### II. Individual Capacity Claims

9

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Buford*, 160 F.3d at 1203 n.7 (stating *Bivens* actions cannot be premised on respondeat superior liability and defendants are liable for their personal acts only). "Each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

## A. Eighth Amendment Medical Care Claims

Fazel sues Steppat in her individual capacity for failure to provide adequate medical care. Doc. 1 at 2, 7-8. Construing his complaint liberally, Fazel brings a claim for deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights, and he also brings this claim against Labrenz and Bennett in their individual capacities. *See id.* at 2, 7-11. A *Bivens* remedy is available for indifference to serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citing *Carlson v. Green*, 446 U.S. 14, 19 (1980)). "[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

10

*Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

Here, Fazel alleges sufficient facts to state claims against Steppat and Labrenz in their individual capacities for deliberate indifference towards his serious medical needs. His bladder and urinary condition were diagnosed by physicians as requiring surgeries, demonstrating objectively serious medical needs. *See* Doc. 1 at 7; Doc. 10 at 1. Although some of Fazel's complaints may be mere disagreement with treatment decisions, his allegations do rise to the level of deliberate disregard for his medical needs. In particular, Steppat's slow responses to his requests for medical attention and failure to change his catheter bag regularly demonstrate deliberate indifference. *See* Doc. 1 at 8; Doc. 1-1 at 17. Fazel alleges that Labrenz, while aware

11

of his recent surgeries and his medical condition, twice required him to push a heavy cart,
causing more harm, even as other inmates were transported by truck. *See* Doc. 1 at 9-10; Doc. 10
at 2. Fazel's claims against Labrenz also rise to the level of deliberate disregard for his medical
needs. Thus, his claims against Steppat and Labrenz in their individual capacities for deliberate
indifference to his serious medical needs in violation of the Eighth Amendment survive § 1915A
screening.

Fazel does not allege sufficient facts to state a claim against Bennett in her individual
capacity for deliberate indifference towards his serious medical needs. Fazel claims that Bennett
ignored grievances in which he detailed staff misbehavior and misconduct. Doc. 1 at 11. Fazel
does not allege that Bennett knew of and disregarded his serious medical needs. At most, Fazel
alleges that other prison staff were deliberately indifferent and that Bennett should have been put
on notice of this indifference by his grievances. *See id.* Under *Spruce*, Fazel must show that
Bennett actually knew of his condition, not just that she should have known of it. Thus, Fazel's
deliberate indifference claim against Bennett in her individual capacity is dismissed without
prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### B. First Amendment Claims

"The purpose of *Bivens* is to deter individual federal officers from committing
constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). But a *Bivens*
remedy is not available for all constitutional violations, and expanding the implied cause of
action under *Bivens* is "a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*,
556 U.S. at 675). The United States Supreme Court has "never held that *Bivens* extends to First
Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). The Eighth Circuit
Court of Appeals has left "for another day the important question whether *Bivens* provides a

12

remedy for First Amendment claims[.]" *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). This court will analyze Fazel's First Amendment claims under 42 U.S.C. § 1983, as the Eighth Circuit did in *Gonzalez*. *Id.* An analysis of whether *Bivens* provides a remedy will only be considered if Fazel's alleged facts amount to a First Amendment violation.

### 1. Access to the Courts Claim

Construing his complaint liberally, Fazel brings claims for denial of his First Amendment right to access the courts against Labrenz in her individual capacity. *See* Doc. 1 at 2; Doc. 14 at 1-4. "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' " *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Casey*, 518 U.S. at 356).

Here, Fazel fails to state a claim for denial of his right to access the courts because he fails to satisfy the actual injury requirement. Fazel alleges that Labrenz withheld a December 16, 2021, court order, in order to "default [his] actions." Doc. 14 at 2. The order in question required Fazel to pay an initial partial filing fee by January 18, 2022. Doc. 7 at 2. Fazel filed a motion to extend this deadline on January 27, 2022, which the Honorable Judge Roberto A. Lange granted, and this Court now considers that initial partial filing fee paid. *See* Doc. 13. Fazel has suffered no injury because of Labrenz's alleged withholding of this court order. Fazel also alleges that

13

Labrenz denied him a document necessary to pursue his First Step Act time credit claims. *See* Doc. 14 at 3. Fazel has an ongoing claim for pursuit of his First Step Act time credits before this Court that is currently unresolved. *See Fazel v. Yankton FPC Warden*, 4:21-CV-04143-LLP. Thus, Fazel's First Step Act time credit claims have not been frustrated or impeded because he is still capable of bringing them before the courts. Fazel's access to the courts claim against Labrenz in her individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 2. Retaliation Claims

#### a. Retaliation Claim against Labrenz

Fazel brings a claim for retaliation against Labrenz in her individual capacity. Doc. 1 at 2, 9-10. Construing his complaint liberally, Fazel claims that Labrenz retaliated against him in violation of his First Amendment rights for exercising his right to use the prison grievance system and his right to access the courts. *See id.* at 9-10; Doc. 14 at 1-4. "The right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in [the Eighth Circuit] for more than twenty years." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Fazel alleges that Labrenz retaliated against him for filing a grievance regarding his medical care by forcing him to do activities that were too strenuous for his condition and that she

14

retaliated against him for initiating a lawsuit against her by impeding his efforts in that and other civil cases. Doc. 1 at 9-10; Doc. 10 at 2; Doc. 14 at 1-4. Thus, taking Fazel's allegations as true, the allegations clearly satisfy the first prong of a First Amendment retaliation claim because "[t]he filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

For Fazel to satisfy the second prong of a First Amendment retaliation claim, he must demonstrate not only that defendants took an adverse action toward him but also that defendants' alleged adverse action "would chill a person of ordinary firmness from continuing in the activity[.]" *Spencer*, 738 F.3d at 911 (quoting *Revels*, 382 F.3d at 876); *see also Jacks*, 486 F.3d at 1029 (holding in a First Amendment retaliation claim that the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process). "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago*, 707 F.3d at 992 (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003)). This is an objective test that looks at whether a reasonable prisoner's actions would be chilled by an official's alleged adverse actions. *See id.* (citing *Garcia*, 348 F.3d at 729).

Here, Fazel has alleged sufficient facts to show that a reasonable prisoner of ordinary firmness would have been "chilled" from using the grievance procedure and asserting an inmate lawsuit. He alleges that he was forced to perform strenuous activities that worsened a serious medical condition and that he has lost opportunities for early release as a result of Labrenz's retaliation. *See* Doc. 1 at 9-10; Doc. 10 at 2; Doc. 14 at 1-4. Although Labrenz's actions did not rise to the level of a constitutional violation for denial of Fazel's right to access the courts, they

can still constitute retaliation, because "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason. Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citation omitted).

To satisfy the third prong, Fazel must show that "the official took the adverse action because the plaintiff engaged in the protected [activity]." *Id.* at 993 (quoting *Revels*, 382 F.3d at 876). Here, Fazel alleges sufficient facts to meet the third prong. He claims that Labrenz first began retaliating against him because he filed a grievance and continued to do so because he pursued a civil lawsuit against her. Doc. 1 at 9-10; Doc. 14 at 1-4. Thus, Fazel has alleged facts to show that Labrenz violated his First Amendment right to be free from retaliation.

Because Fazel has successfully stated a First Amendment violation, the Court must now determine if *Bivens* provides a remedy for this violation. In *Ziglar*, the Supreme Court acknowledged that it has recognized three instances where a *Bivens* remedy is available: (1) a violation of the Fourth Amendment's prohibition on unreasonable searches and seizures; (2) a violation of the Fifth Amendment's Due Process Clause for gender-based discrimination; and (3) a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *Ziglar*, 137 S. Ct. at 1854-55. But the *Ziglar* Court explained that it now expresses caution as to judicial findings of implied causes of action under the Constitution and has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1856-57 (quoting *Malesko*, 534 U.S. at 68).

The *Ziglar* Court explained that "[t]he proper test for determining whether a case presents a new *Bivens* context is" to determine whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Cour[t]." *Id.* at 1859.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. If the case is meaningfully different from past cases, the Court should then ask if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court has not defined a special factor but has stated "that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

The Court should also ask "if there is an alternative remedial structure present[.]" *Id.* at 1858. Because "if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.' " *Id.* at 1858 (alterations in original) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Then the Court must weigh the "reasons for and against the creation of a new cause of action, the way common law judges have always done." *Wilkie*, 551 U.S. at 554. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress . . . ." *Ziglar*, 137 S. Ct. at 1858.

The Supreme Court has never implied a *Bivens* cause of action for First Amendment retaliation. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) ("[W]e have several times assumed *without deciding* that *Bivens* extends to First Amendment claims." (emphasis added)); *see also Johnson v. Burden*, 781 F. App'x 833, 836-37 (11th Cir. 2019) (discussing cases in which the Supreme Court "has repeatedly confirmed that it has not extended a *Bivens* remedy to First Amendment claims"). Fazel's claim is meaningfully different from the three instances in which the Supreme Court has recognized a *Bivens* remedy. *See Ziglar*, 137 S. Ct. at 1854-55. Thus, this Court must perform a special factors analysis.

In *Bush v. Lucas*, the Supreme Court declined to recognize a *Bivens* action for a First Amendment suit alleging retaliatory demotion in an employment context because the cost, time, and energy associated with defending a *Bivens* action against a federal employee were significant and because Congress was in a better position to evaluate the need for a damages action in a First Amendment suit between federal employees. *Bush v. Lucas*, 462 U.S. 367, 388-90 (1983). Thus, the Court found there were "special factors counselling hesitation." *See id.* at 390 (Marshall, J., concurring). Further, the Court found that alternative remedies existed because "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme . . . by which improper action may be redressed." *Id.* at 385.

The factors applicable in *Bush* apply here. The cost, time, and energy associated with defending this claim would be significant. Further, Congress has created "alternative, existing process[es]" for protecting the interests in question. *See Ziglar*, 137 S. Ct. at 1858 (quoting *Wilkie*, 551 U.S. at 550). First, as Fazel's retaliation claim against Labrenz stems largely from the same set of facts as his deliberate indifference to serious medical needs claim against her, he can seek relief through that claim. Second, although Fazel alleges that the prison grievance

18

system has not resolved his complaints, it is an existing process for protecting prisoner interests. Third, to the extent that Fazel challenges the fact or duration of his confinement, the habeas corpus remedy provides Fazel with an alternative process. Thus, this Court finds that *Bivens* does not provide a remedy for Fazel's First Amendment retaliation claim against Labrenz in her individual capacity, and that claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### b. Retaliation Claim Against Steppat

Construing his complaint liberally, Fazel brings a claim for retaliation against Steppat in her individual capacity. *See* Doc. 1 at 8. He alleges that Steppat retaliated against him after he filed grievances to the regional office regarding his medical care by denying him the right to speak to facility doctors while he was bleeding, falsifying urine samples, requiring him to work and attend programming while on medical idle status, threatening to write him up, denying him pain medication, and requiring medical evaluations to be done in front of non-medical prison staff. *Id.*

The Court finds that these allegations meet the three-part standard for retaliation under *Spencer*. First, as discussed above, the filing of inmate grievances is a protected activity. *See Jacks*, 486 F.3d at 1029. Second, Fazel alleges that Steppat deliberately withheld medical care and falsified lab results, which are actions that would chill a person of ordinary firmness from continuing in the protected activity. *See* Doc. 1 at 8. Third, Fazel claims that these actions were Steppat's response to his filing a grievance. *Id.* Thus, Fazel has alleged facts to show that Steppat violated his First Amendment right to be free from retaliation. But as above, the Court finds that *Bivens* does not provide a remedy for this claim. The cost, time, and energy associated with defending this claim would be significant, and Fazel's deliberate indifference claim against

Steppat already provides an existing remedy for his allegations against Steppat. Thus, Fazel's

retaliation claim against Steppat in her individual capacity is dismissed without prejudice under

28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### C. Fifth Amendment Equal Protection Claims

Construing his complaint liberally, Fazel alleges that prison staff violated his Fifth

Amendment right to equal protection of the laws. *See* Doc. 1 at 8; Doc. 1-1 at 7, 10-11.

Specifically, he claims that he and other African American inmates are treated differently by

prison medical staff, not allowed to use a certain TV room, not provided a truck for moving

dorms, not allowed to serve in certain prison jobs alongside white employees, and not allowed in

the chapel to worship. Doc. 1 at 8; Doc. 1-1 at 7, 10-11. Under *Iqbal*, Fazel must allege that each

defendant violated the Constitution through his or her own actions. While Fazel alleges facts that

may support a finding that his equal protection rights were violated, he can only bring this claim

against the individuals who personally violated his rights. *See Iqbal*, 556 U.S. at 677. He does

not specify which prison officials refused him a truck to transport his property or which officials

were responsible for discriminatory prisoner employment, worship, or TV room policies. *See*

Doc. 1-1 at 7, 10-11. Further, while the Supreme Court has acknowledged that a prisoner can

seek injunctive relief alongside a *Bivens* action for money damages, *Farmer*, 511 U.S. at 846,

850-51, the only forms of injunctive relief sought by Fazel address medical treatment at the

prison and Labrenz's actions towards him. Doc. 1 at 12. Thus, Fazel's equal protection claims

based on these allegations are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii)

and 1915A(b)(l).

Fazel alleges that prison medical staff, including Steppat, discriminated against him and

other African American inmates. *Id.* at 8. The Fifth Amendment due process clause governs

equal protection claims against the United States, and the Supreme Court has explained that an equal protection analysis is "precisely the same" under the Fifth and Fourteenth Amendments. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975). The equal protection clause of the Fourteenth Amendment is "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (internal quotations and citations omitted). Classifications based on race are considered a suspect classification. *See Graham v. Richardson*, 403 U.S. 365, 371-72 (1971). The prisoner must also show that the different treatment is "motivated by intentional or purposeful discrimination." *Patel*, 515 F.3d at 816. Here, Fazel alleges that he is treated differently than other inmates based on his race, a suspect classification. Specifically, he claims that he and other African American inmates are treated differently by prison medical staff. Doc. 1 at 8. He also alleges that this different treatment has a discriminatory motive. *See id.* Thus, Fazel successfully alleges that his Fifth Amendment rights have been violated.

In *Patel*, although the Eighth Circuit affirmed the lower court's grant of summary judgment in favor of the defendants on a *Bivens* claim for racial discrimination in violation of plaintiff's Fifth Amendment right to equal protection, it considered the merits of this claim, rather than finding that *Bivens* does not provide a remedy for violations of this right. *See Patel*, 515 F.3d at 815-816. This is a different approach than the Eighth Circuit took in Gonzalez, where it explicitly stated that it was not addressing whether *Bivens* provided a remedy for the right in question. *See Gonzalez*, 971 F.3d at 745. Here, the Court finds that Fazel's race-based

21

Fifth Amendment equal protection claim is not meaningfully different from the gender-based

Fifth Amendment equal protection claim recognized by *Ziglar* because both are claims involving

the same right, even if the suspect classifications in question are different. *See Ziglar*, 137 S. Ct.

at 1854-55 (citing *Davis v. Passman*, 442 U.S. 228, 248-49 (1979)). Thus, the Court finds that

*Bivens* provides a remedy for this claim, and Fazel's Fifth Amendment equal protection claim

against Steppat in her individual capacity survives § 1915A screening.

### D. Remaining Claims Against Warden Bennett

#### 1. Failure to Supervise Claims

Fazel claims that Bennett's failure to supervise caused staff misconduct and that she

ignored retaliation by staff. Doc. 1 at 11. Construing his claims liberally, Fazel brings a claim

against Bennett in her individual capacity for failure to supervise in violation of his constitutional

rights. "[A] supervising officer can be liable for an inferior officer's constitutional violation only

'if he directly participated in the constitutional violation, or if his failure to train or supervise the

offending actor caused the deprivation.' " *Parrish v. Ball*, 594 F.3d 998, 1001 (8th Cir. 2010)

(quoting *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)). One requirement for a failure to

train or supervise claim is that the supervising officer "demonstrate[] deliberate indifference to or

tacit authorization of the offensive acts" after receiving notice of a pattern of unconstitutional

acts. *Otey*, 121 F.3d at 1155.

Here, Fazel fails to allege facts to state a claim against Bennett for failure to supervise.

He claims that Bennett "failed her supervisory role and duties to monitor staff misconduct,

management, as well as ignoring the retaliation by staff against inmates [sic] rights." Doc. 1 at

11. He also claims that Bennett failed to hold staff accountable for improper behavior and

misconduct and that she allowed retaliation by staff against inmates. *Id.* These claims are

conclusory and make no showing that Bennett's failure to supervise caused the alleged deprivations in question. Fazel does not allege facts that raise his right to relief above the speculative level as required by *Twombly*. Thus, his failure to supervise claim against Bennett in her individual capacity are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 2.  Grievance Process Claims

Fazel brings a claim against Bennett in her individual capacity for her failure to respond to grievances. In *Buckley v. Barlow*, the Eighth Circuit explained that a prison grievance procedure "is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." 997 F.2d 494, 495 (8th Cir. 1993) (quotation omitted); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) (citing *Buckley* for the proposition that "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983"). Although *Buckley* discussed a state prisoner's rights regarding grievance procedures under the Fourteenth Amendment due process clause, this Court finds that the same analysis applies to Fazel's grievance procedure claims under the Fifth Amendment due process clause. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("[F]ederal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure."). Here, Fazel alleges that the way grievances are processed or remedied violates his rights, but this alone does not arise to the level of a constitutional violation. Thus, Fazel's grievance process claim against Bennett in her individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### III. Motion to Appoint Counsel

23

Fazel has filed a motion to appoint counsel. Doc. 9. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, the Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. *Id.* At this time, Fazel's claims do not appear to be too complex, and Fazel is able to investigate the facts and present his claims adequately. The Court remains open to the possibility of appointing counsel if this case proceeds beyond the motion stage. It is one thing to well represent one's position on paper to the court, and it is yet another to be able to adequately try a case to a jury. Thus, this Court denies Fazel's motion to appoint counsel.

## IV. Motions for Emergency Release

Fazel has filed two motions for emergency release. Docs. 10, 14. In his first motion, Fazel asks this court to order his immediate release, arguing that he should be released under the First Step Act's time credits provision. Doc. 10 at 2. In his second motion, Fazel seeks an order for his immediate release to protect him from Labrenz's retaliation and an order preventing Labrenz from contacting him. *See* Doc. 14 at 4. In *Heck v. Humphrey*, the Supreme Court explained that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). Although *Heck* dealt with § 1983 claims by a state prisoner, the Eighth Circuit has applied the *Heck* doctrine to a *Bivens* action by a federal prisoner. *See Whitmore v. Harrington*, 204 F.3d 784, 784-85 (8th Cir. 2000) (per curiam); *see also Vennes v. An Unknown No. of Unidentified Agents*, 26 F.3d 1448, 1452 (8th Cir. 1994)

24

(describing *Bivens* as "the federal law analogous to § 1983"). Fazel challenges the duration of his confinement and seeks immediate release. The appropriate vehicle for Fazel's challenge to his confinement is his ongoing 28 U.S.C. § 2241 claim. *See Fazel v. Yankton FPC Warden*, 4:21-CV-04143-LLP. Thus, this Court denies his motions for emergency release. To the extent that Fazel requests a no contact order, this Court will consider Fazel's requests for injunctive relief if his claims are ultimately successful.

Accordingly, it is

ORDERED:

1. That Fazel's claims against all defendants in their official capacities are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2. That Fazel's 42 U.S.C. § 1983 claims against all defendants are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

3. That Fazel's Eighth Amendment deliberate indifference to serious medical needs claims against Steppat and Labrenz in their individual capacities survive § 1915A screening.

4. That Fazel's Fifth Amendment equal protection claim against Steppat in her individual capacity survive § 1915A screening.

5. That all of Fazel's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Fazel so that he may cause the complaint to be served upon defendants.

7. The Clerk of Court shall prepare and issue summonses for service under Rule 4(i)(1) and (2) of the Federal Rules of Civil Procedure. In all other instances, Fazel shall complete and send the Clerk of Courts a separate summons and USM-285 form for each

defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

8. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Doc. 1), the motions containing additional allegations (Docs. 10, 14) and this order, upon the defendants.

9. Defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the Defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

10. The Clerk of Court is directed to send a copy of this order to the appropriate official at Fazel's institution.

11. Fazel will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

12. That Fazel's motion to appoint counsel, Doc. 9, is denied.

13. That Fazel's motions for emergency release, Docs. 10 and 14, are denied.

DATED April 6, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK