UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DONALD O. FAZEL, | 4:21-CV-04219-LLP |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| CARLA STEPPAT, Nurse Practitioner for BOP at FPC Yankton in her individual capacity; SASHA LABRENZ, BOP Unit Manager at FPC Yankton in her individual capacity, | |
| Defendants. | |

Pending before the Court is defendants' motion to dismiss, Doc. 26. The defendants

provided a brief in support (Doc. 27) and a declaration of Justice Evans (Doc. 28). For the

following reasons, the Court grants defendants' motion to dismiss.

## FACTUAL BACKGROUND

Plaintiff, Donald O. Fazel, was at all times relevant an inmate at the Yankton Federal

Prison Camp (FPC). Doc. 1 at 1. Fazel filed a pro se action under 28 U.S.C. § 1331 and *Bivens v.*

*Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) against Carla Steppat and Sasha

Labrenz, employees at the Yankton FPC. *Id.* at 7–10; Doc. 17 at 1 n.1. Fazel's Fifth Amendment

Equal Protection claim against Steppat, a certified nurse practitioner at Yankton FPC, survived

28 U.S.C. § 1915A screening. Doc. 17 at 22. Fazel also alleged Eighth Amendment claims

against Steppat and Labrenz, a unit manager at Yankton FPC, which survived § 1915A

screening. *Id.* at 11–12.

Fazel experienced bladder troubles while incarcerated at the Yankton FPC. Doc. 1 at 7.

Fazel had a catheter was inserted into him at the Yankton Medical Clinic. *Id.* Upon return to the

Yankton FPC, Fazel met with Nurse Steppat, who told him that he could go back to work

programming for the day. *Id.* at 7. Fazel claims he told her that he was unable to do so because he just had a catheter placed, but Steppat told him that people wear them all the time and he should just stay off duty the rest of the day and return the next day. *Id.*

Fazel experienced significant pain the night the catheter was inserted and contacted Steppat. *Id.* at 8. He claims he told Steppat he was in major pain, had blood in his urine, and requested to see a doctor. *Id.* He claims that Steppat denied him pain medication and told him to get Tylenol from the commissary. *Id.* Fazel alleges that he informed Steppat that he could not afford Tylenol, so offered him three days of Tylenol but refused to let him see the facility doctor. *Id.* He alleges that he had to wait four days to receive the Tylenol and that it took him thirty days to see a urologist again. *Id.* Fazel claims that staff nurses discriminate against people of color, requiring officers or non-licensed medical professionals to be present for examinations of inmates of color and using gloves when treating these inmates, procedures Fazel claims are not required for white inmates. *See id.* He claims that the medical department is supposed to respond in two to three days to urgent matters, but it took them eight days to respond to his emails regarding blood in his urine and bleeding around his genital area. *Id.*

Fazel alleges that Unit Manager Sasha Labrenz placed him on a list to move dorms on November 16, 2021, four days after she returned to him a complaint that he filed about the medical department. Doc. 1 at 9. He alleges that he told Labrenz that he could not do any moving because of his catheter and his condition. *Id.* He alleges that Labrenz said that medical had authorized her to move Fazel and to require him to do the lifting and labor to move. *Id.* Fazel claims that moving required pushing a 300-pound cart a quarter mile. *Id.* He claims that Labrenz told him he would be written up if he did not move by 8:00 A.M. the next day, so he spent the next four hours packing his property, loading it onto a cart, and pushing it the quarter mile to his

2

new dorm. *Id.* He also claims that he saw a Bureau of Prisons (BOP) truck loading property for white inmates who were not required to push a cart. *Id.*; Doc. 1-1 at 7. He alleges that his catheter began falling out while he moved dorms, causing significant bleeding and blood in his urine afterwards. Doc. 1 at 9–10. He also alleges that he emailed the nurse to try to see the doctor and tell him of his condition, but he never received a response to this email. *Id.* at 10.

Fazel claims that he was required to move dorms a second time on December 27, 2021, ten days after his surgery. *Id.* He claims that he was taken off medical idle status, returned to the general population, and again required to push a cart with his belongings a quarter mile, despite having instructions from his doctor that he was not to perform any strenuous activities for four to six weeks. *Id.* Fazel alleges that he has been required to work, attend programming, move heavy objects, walk across campus, and travel to the kitchen for meals despite his pain and bleeding since the second move. *Id.*

Fazel filed eight grievances relevant to his lawsuit while at the Yankton FPC. Doc. 28 at 5. Seven of his grievances were outright rejected with the option to correct the deficiencies and refile; these administrative remedies were filed on (1) September 20, 2021; (2) November 11, 2021; (3) December 8, 2021; (4) December 13, 2021; (5) December 21, 2021; (6) January 10, 2022; and (7) March 7, 2022. Doc. 28-3 at 22-26. On February 25, 2022, Fazel filed one grievance that was properly filed but later dismissed on procedural grounds with instructions that he could resubmit within ten days. *Id.* at 25. Fazel has not appealed any of these decisions to the fourth step. Doc. 27 at 8.

## LEGAL STANDARD

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 26. To avoid dismissal under Rule 12(b)(6), the plaintiff must have

included in the complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accord, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See also Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022) (dismissal proper where factual allegations failed to state plausible claim for relief). As the Court considers a motion to dismiss, it must assume all facts alleged in the complaint are true. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014); *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). *See also Yankton Sioux Tribe v. U.S. Dept. of Health & Human Services*, 496 F. Supp. 2d 1044 (D.S.D. 2007). Although the Court should grant the motion to dismiss only in the "unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief," it is a requirement that the complaint "contain facts which state a claim as a matter of law and must not be conclusory." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). *See also Schaaf*, 517 F.3d at 549. While conclusory statements are insufficient, well-pleaded factual allegations should be deemed true and the District Court should proceed to determine whether plaintiff is entitled to relief. *Drobnak v. Andersen Corp.*, 561 F.3d 778 (8th Cir. 2009).

In a case such as this where a plaintiff is proceeding pro se, the complaint "is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Furthermore, a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *See also Fed. Express Corp. v, Holowecki*, 552 U.S. 389, 402 (2008). It is also the case, however, that "[a] court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded." *Johnson v. Kaemingk*, 381 F. Supp. 3d 1104, 1110 (D.S.D. 2019) (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

4

## DISCUSSION

The defendants allege three grounds to dismiss: (1) failure to exhaust administrative remedies, (2) qualified immunity, and (3) new context for applying *Bivens*. Doc. 27 at 7. The defendants assert all three grounds against Fazel's Fifth and Eighth Amendment claims. *Id.*

### I.     Fazel's Failure to Respond

The deadline to respond to defendants' motion to dismiss was November 4, 2022. Doc. 26; D.S.D. Civ. LR 7.1(B). Fazel has not responded; thus, this motion is unopposed. But failure to comply with submitting a response does not grant the Court reason on its own to grant the defendants' motion to dismiss. *See Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 149–50 (8th Cir. 1981) (stating that it is "the court's duty to inquire into the merits of the motion … in accordance with law and relevant facts" regardless of compliance with local rules). Thus, this Court will analyze the defendants' motion to dismiss on the merits.

### II.    Defendants' Documents in Support of Motion to Dismiss

Federal Rule of Civil Procedure 12(d) limits that on a motion under Rule 12(b)(6) courts cannot consider outside materials without converting the motion to a motion for summary judgment. "A court need not convert a Rule 12(b)(6) motion to dismiss into on[e] for summary judgment under Rule 12(d) if the matters presented are incorporated by reference, are integral to the claim, or are exhibits whose authenticity is unquestioned." *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 876 (E.D. Mo. 2013) (citing *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012)).

When analyzing a motion to dismiss, "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings."

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations and citations omitted). A "court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.' " *Id.* (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1357, at 299 (1990)). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.' " *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). "The Eighth Circuit has stated that the 'necessarily embraced' exception does not disrupt the original intent of Rules 12(b)(6) and 12(d), which is to ensure that a 12(b)(6) motion will succeed or fail based on the allegations contained on the face of the complaint." *Young v. Principal Fin. Grp., Inc.*, 547 F. Supp. 2d 965, 973 (S.D. Iowa 2008) (citing *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687–88 (8th Cir. 2003)).

At issue in the present case is whether the declaration of Justice Evans (Doc. 28) submitted by the defendants is necessarily embraced by the pleadings. In Fazel's complaint, he attached five of his administrative remedy appeals and three of his rejection notices. *See* Doc. 1-1 at 1–7; Doc. 10 at 5–8, 11. The defendants provided a declaration of Evans discussing Fazel's failure to exhaust his administrative remedies. *See* Doc. 28. Fazel's complaint, by alleging he filed several sensitive administrative remedies pleading for help and attaching several of those administrative remedy appeals and rejections of those appeals, necessarily embraced the content alleged in Evans' declaration. Thus, this Court can consider the content of Evans' declaration without converting Fazel's motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 12(d).

## III.    Failure to Exhaust Administrative Remedies

Defendants moved to dismiss Fazel's Complaint based on his failure to exhaust available administrative remedies. Doc. 26; Doc. 27 at 7–8. Pursuant to the Prison Litigation Reform Act (PLRA), Defendants contend that Fazel's action is not properly before a federal court until he has exhausted the BOP's administrative procedure for prisoner grievances. Doc. 27 at 7–8. The Court agrees. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). Prior to 1996, whether a prisoner was obligated to exhaust any available administrative remedies was largely discretionary with the court. *See Nussle,* 534 U.S. at 523. As passed in 1996, however, 42 U.S.C. § 1997e(a) of the PLRA makes "exhaustion in cases covered by [the statute] [ ] mandatory." *Id.* at 524. Further,

> unlike the previous provision, which encompassed only [42 U.S.C.] § 1983 suits, exhaustion is now required for all "action [s] (sic) ... brought with respect to prison conditions," whether under § 1983 or "any other Federal law." Compare 42 U.S.C. § 1997e (1994 ed.) with 42 U.S.C. § 1997e(a) (1994 ed., Supp. V). Thus federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[1], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.

*Id.* (first alteration added). That Fazel is seeking money damages is inconsequential. *See Booth v. Churner,* 532 U.S. 731, 733–34 (2001) (finding that the Prison Litigation Reform Act of 1995 as amended by 42 U.S.C. § 1997e(a) requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. "The question is whether an

---

[1] In *Bivens,* the Supreme Court "implied a cause of action for damages against federal agents who allegedly violated the Constitution." *F.D.I.C. v. Meyer,* 510 U.S. 471, 473 (1994). The *Meyer* opinion "emphasized that 'the purpose of *Bivens* is to deter *the officer,*' not the agency." *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 69 (2001) (quoting *Meyer,* 510 U.S. 471 at 485) (emphasis in original).

inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must."). Furthermore, "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Nussle,* 534 U.S. at 532. Ultimately, the burden of showing a failure to exhaust is on the defendant. *Bock,* 549 U.S. at 212 (finding that "the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense."); *Porter v. Sturm,* 781 F.3d 448, 451 (8th Cir. 2015) (citing *Bock,* 549 U.S. at 211–12) ("Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion."); *Wheeler v. Prince*, 318 F. Supp. 2d 767, 771 (E.D. Ark. 2004) ("Inasmuch as exhaustion is an affirmative defense, defendants must raise and prove that plaintiff did not exhaust administrative remedies.").

In order to satisfy 42 U.S.C. § 1997e(a), an inmate must "pursu[e] 'the grievance process to its final stage' to 'an adverse decision on the merits.' " *Sturm,* 781 F.3d at 451 (quoting *Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014)). Relevant to what constitutes the "final stage," the Supreme Court held in *Woodford v. Ngo* that "the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion[,]" 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Thus, to constitute the "final stage" of a prison system's administrative process, the inmate must proceed through to the process's terminus. The inmate cannot manufacture that terminus by means of "bypass[ing] deliberately the administrative process by flouting the agency's procedural rules."

*See id.* at 97.

"The Bureau of Prisons (BOP) has a multi-step process for inmates to use in bringing complaints about any aspect of their confinement: an informal resolution, [*see* 28 C.F.R. § 542.13(a),] an administrative remedy (with the warden), [*see* 28 C.F.R. § 542.14(a),] an appeal to the BOP's regional director, [*see* 28 C.F.R. § 542.15(a),] and finally an appeal to the BOP's central office[, *see id.*]." *Marlin v. Marquez,* 218 F. App'x 545, 545 (8th Cir. 2007) (per curiam).[2] Each step has requisite deadlines that must be met. In *Marlin,* the Eighth Circuit found that the plaintiff, a federal inmate, had failed to rebut the BOP's attorney's declaration that the inmate had not complied with the foregoing BOP administrative process. The *Marlin* Court noted that it would have been impossible for the plaintiff to have complied with 28 C.F.R. § 542's process because he filed the complaint "just thirteen days after he was assigned to the job giving rise to the [ ] lawsuit[.]" *Id.*

Here, the Court agrees with the defendants that Fazel has failed to properly exhaust his administrative remedies. Defendants argue in their brief "Fazel failed to exhaust his administrative remedies with respect to the claims in the lawsuit. Fazel did not file or grieve any issue through to Step 4 prior to filing his Complaint." Doc. 27 at 8 (citing Doc. 28 ¶¶ 11, 16–17). Fazel filed his appeals as sensitive with the regional office, but the regional office informed him that his matters were not sensitive and that he must file a request with his institution before filing an appeal. Doc. 1-1 at 5; Doc. 10 at 5, 7. Seven of Fazel's grievances were rejected with the opportunity for him to correct deficiencies and refile, but Fazel failed to do so. Doc. 1-1 at 5;

---

[2] While unpublished opinions have no precedential value, they may be cited for their persuasive value. *See* Fed. R. App. P. 32.1. *See also Smith v. Colvin,* No. 14–CV–0412–CVE–FHM, 2015 WL 5311351, at *4 n.3, 2015 U.S. Dist. LEXIS 121204, at *11 n.3 (N.D. Okla. Sept. 11, 2015); *United States v. Baker,* 625 F. App'x 844, 845 n.1 (10th Cir. Sept. 4, 2015).

Doc. 10 at 5, 7; Doc. 27 at 8; Doc. 28 ¶¶ 18–23, 25; Doc. 28-3 at 22–26. Fazel's grievances from February 25, 2022, was initially accepted as properly filed, but after the warden responded, his filing was rejected on procedural grounds with the ability to resubmit, which he did not do. Doc. 27 at 8; Doc. 28 ¶ 24; Doc. 28-3 at 25. All of Fazel's claims were dismissed with the opportunity to refile or correct deficiencies, which Fazel did not do. Doc. 1-1 at 5; Doc. 10 at 5, 7; Doc. 27 at 8; Doc. 28 ¶¶ 18–23, 25; Doc. 28-3 at 22–26. This Court agrees with the defendants that Fazel failed to exhaust his administrative remedies because he did not grieve any of his issues through Step 4 before filing his complaint. See Doc. 27 at 8. Thus, the Court dismisses Fazel's claims for failure to exhaust his administrative remedies.

**IV.     Defendants' Other Grounds for Dismissal**

The defendants alleged other grounds for dismissal: qualified immunity and that Fazel's claims are not cognizable under *Bivens*. *See* Doc. 27 at 7. This Court need not consider these grounds for dismissal because this Court already determined that Fazel's complaint is dismissed for failure to exhaust administrative remedies as required under the PLRA.

Accordingly, IT IS ORDERED that the defendants' motion to dismiss (Doc. 26) is granted and Fazel's claims are dismissed without prejudice.

DATED September **14**, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

10